UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LUIS B.I.,

          Petitioner,

     v.

WARDEN OF THE CALIFORNIA CITY
DETENTION FACILITY,

          Respondent.

No. 1:26-cv-3000-TLN-JDP

A # 205-467-533

**ORDER**

This matter is before the Court on Petitioner Luis B.I.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondent filed an opposition. (ECF No. 8.) For the reasons set forth below, Petitioner's habeas petition is GRANTED.

///

///

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner filed the instant Petition for Writ of Habeas Corpus to challenge the lawfulness of his civil detention.[2]  (ECF No. 1.)  The facts in the *pro se* petition are sparse.  Petitioner states his family brought him to the United States from Guatemala at 18 years old, after his cousin was killed by organized crime (MS-13) and threatened him as well.  (*Id.* at 6.)  According to the Form I-213 provided by Respondent, U.S. Customs and Border Patrol ("CBP") previously apprehended Petitioner on May 22, 2008 and May 31, 2008 in Arizona and returned him to Mexico as voluntary returns.  (ECF No. 8-1 at 3–4.)  On March 13, 2023, Petitioner was picked up by U.S. Immigration and Customs Enforcement ("ICE") after he was arrested for robbery and false imprisonment, but these charges were eventually dropped.  (*Id.* at 4.)  Petitioner was issued a Notice to Appear under Immigration and Nationality Act § 212(a)(6)(A)(i).  (*Id.*)  On March 14, 2013, Petitioner posted a $5,000 bond and was released from ICE custody.  (*Id.*)

On May 10, 2021, Petitioner was convicted of involuntary manslaughter, carrying a loaded firearm, and concealed firearm on person in San Francisco County, California and sentenced to twelve years.  (*Id.* at 3.)  Petitioner was incarcerated at California Medical Facility ("CMF") in Vacaville, California, and CMF notified ICE their records identified Petitioner as a foreign national with an active ICE detainer.  (*Id.*)  Petitioner was scheduled for release on February 4, 2026, when ICE served him with a warrant of arrest at CMF.  (*Id.*)

Petitioner alleges he has been detained since February 5, 2026.  (ECF No. 1 at 6.)  On April 21, 2026, Petitioner filed the instant habeas petition.  (*See id.*)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas

---

[2]    Petitioner initially filed his petition *pro se*, but the Court has since appointed counsel for Plaintiff who has appeared in this case.  (ECF Nos. 10, 11.)

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.    ANALYSIS**

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 5, 16.)  In opposition, Respondent contends Petitioner is an "applicant for admission" subject to the mandatory detention scheme of 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (ECF No. 8 at 1–2.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

       A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."

*Zadvydas*, 533 U.S. at 690.  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a protected liberty interest in his continued freedom.  The Government's decision to release Petitioner on parole was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release.  *Morrissey*, 408 U.S. at 482.  Respondent attaches Petitioner's RAP sheet to its brief, but only states that "[i]t was Petitioner's encounter with law enforcement that led to [his] detention."  (ECF No. 8 at 1.)  However, Respondent does not make any substantive argument that he is subject to mandatory detention due to his criminal history.

Further, the Court is not persuaded by Respondent's argument that Petitioner is subject to mandatory detention under § 1225(b)(2) as an "applicant for admission."  Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondent's position.  *See e.g.*, *Hortua v. Chestnut*, No. 1:25-CV-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice."  *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases).  Respondent does not set forth any new arguments or facts justifying a different conclusion in this case.

Accordingly, Petitioner has a clear liberty interest in his continued freedom protected by the Fifth Amendment.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)

(noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened his liberty interest).

B.    Process Required

Having found Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). The *Mathews* factors support requiring Petitioner receive notice and a hearing before a neutral decisionmaker prior to re-detention.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the Government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of his loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

Second, the risk of erroneous deprivation of Petitioner's liberty interest is lowered in light of his criminal history. (*See* ECF No. 8-3.) "Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025). As Petitioner received virtually no procedural safeguards such as a bond or custody redetermination hearing, there is a risk that he is being detained without justification. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

5

Third, the Government has an interest in detaining individuals who are a danger to the community or a flight risk.  But as the Court noted earlier, Respondent makes no such arguments with respect to Petitioner.  "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994.  Further, the Government's interest in detaining Petitioner without notice and a hearing is negligible.  Custody hearings in immigration court are "routine and impose a 'minimal' cost," and the Government's interest is further diminished where, as here, Petitioner was already found appropriate for release.  *R.D.T.M.*, 2025 WL 2686866 at *6.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to his detention.  He received neither.

Accordingly, the Court finds Respondent violated Petitioner's due process rights.

**IV.    CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED:

1.    Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED:

    a.    Respondent is ENJOINED and RESTRAINED from continuing to detain Petitioner for more than **seven days** from the date of this Order without a bond hearing before a neutral fact-finder at which Respondent bears the burden to justify Petitioner's detention by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  *See Perera v. Jennings, et al.*, No. 21-CV-04136-BLF, 2021 WL 2400981, at *6 (N.D. Cal. June 11, 2021) (explaining basis for burden).  The fact-finder must also consider Petitioner's financial circumstances for bond and alternative conditions of release.  *See Hernandez*, 872 F.3d at 991.  At any such hearing, Petitioner shall be allowed to have counsel present.  If Petitioner is not found to be a danger to society or flight risk, Respondent must immediately release Petitioner.  Respondent may impose any restrictions or conditions determined to be necessary by the neutral fact-

6

finder at the hearing;

    b.   Within **eight days** from the date of this Order, Respondent must file a notice of compliance with this Court's Order and, if a bond hearing was held, identify the outcome of the hearing; and

    c.   If Petitioner is released, Respondent is further ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future.  At any such hearing, Petitioner shall be allowed to have counsel present; and

2.    The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 18, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE